[No. 23171. Department Two. March 16, 1932.]

FRANK M. FARROW, *Appellant,* v. EMILY L. STORCK *et al., Respondents.*[1]

*Mary H. Alvord,* for appellant.

*Carkeek, McDonald & Harris,* for respondents.

MAIN, J.—This action was brought by the plaintiff to restrain the defendants, George H. Storck and wife and the sheriff of King county, from foreclosing a chattel mortgage by notice and sale through the sheriff's office, and for damages for alleged constructive eviction. Storck and wife filed a cross-complaint in which they sought foreclosure of the chattel mortgage. The cause was tried to the court without a jury, and resulted in a judgment dismissing the action of the plaintiff and ordering a foreclosure of the chattel mortgage. From this judgment, the plaintiff appeals.

The respondents George H. Storck and wife will be referred to as though they were the only parties on

[1]Reported in 9 P. (2d) 105.

that side of the controversy. They owned what is referred to as "Broadway Hall," a three-story building located at Broadway and Madison streets, in Seattle. The building was about twenty-five years old. The respondents had owned it for a period of about twenty-three years. The top floor of the building consisted of apartments. On the second floor there were two halls, one large and one small, and some dressing rooms. This floor was constructed for the purpose of a dance hall or a dancing school, and had at no time been used for any other purpose. The first or street floor was divided into storerooms and a moving picture theatre known as the "Madison Theatre." The theatre is on the east side of the building, and fronts Madison street on the south. A portion of the large dance hall was over a part of the theatre.

The appellant began his occupancy of the theatre in April, 1927, under an arrangement with the then tenant. Later, he entered into a five-year lease for the same from the respondents, which lease was dated September 1, 1927, and called for a monthly rental of $150, securing the same by note and chattel mortgage in the sum of $5,000, the mortgage covering the furniture, fixtures and equipment in the theatre. The lease provided that the premises could only be used for theatre purposes.

During the summer of 1929, the second floor of the building was leased by the respondents to Mortimer Merrick for a dancing school, and he commenced giving lessons sometime in September of that year. He taught both ballroom dancing and tap dancing, the latter classes averaging between ten and fourteen. The ballroom classes increased from time to time, and at times there were present about one hundred twenty-five people. This continued until April 6, 1930, when

the appellant, in response to a three-day notice to pay rent or vacate, left the premises.

During the last few months of the year 1929, the attendance at the theatre very much diminished, and the business was not paying. The appellant says that this was due to the tap dancing in the dance hall above, which could be heard by the persons attending the theatre. The respondents say that the falling off in the attendance was due to other causes. Just prior to this time, the sound or talking picture had been installed in a large number of the theatre houses in the city. There were two kinds of talking picture equipment. One is referred to as the "standard equipment," and is manufactured by the Radio Corporation of America and the Western Electric Company. The other is what is referred to as homemade or "bootleg" equipment. The standard equipment was hard to get, and was expensive. The homemade equipment was much less expensive. The appellant installed in the Madison Theatre the homemade equipment. It is plain from the evidence that the production from this equipment was not as satisfactory to theatre goers as was that from the standard equipment.

▪ ██ Whether the failure of the business of the appellant was due to the tap dancing or to other causes, presents a question of fact. After reading and considering the abstract of the testimony, which covers almost five hundred pages, we are of the opinion that, if the tap dancing had anything to do with the falling off of the attendance at the Madison Theatre, it was not the principal cause.

Upon the question as to whether the tap dancing could be heard in the theatre, the evidence is in dispute, but we shall assume that it could be heard. After Mr. Merrick's attention had been called to the fact that

his tap dancing class, which was then being held in the portion of the dance hall immediately over the theatre, was disturbing the people in the theatre, he moved the class to a portion of the hall which was not over the theatre. After this, if the tap dancing could be heard by persons in the theatre, it was much less disturbing than it had been prior to that time, and probably would not have been noticed when a silent picture was being presented, but was noticeable when a sound picture was shown.

As we view the evidence, it leads irresistibly to the conclusion that the principal and primary cause in the falling off of the attendance at the Madison Theatre was due to the kind of equipment which had been installed therein. A theatre in which was installed the homemade equipment was not in a position to compete with other and larger theatres in the downtown district, which was only ten or twelve blocks away, and one theatre in the immediate district where the Madison Theatre was located, that had installed the standard equipment.

Another contributing cause undoubtedly was the depression which affected the attendance at picture houses generally. The respondents urge other contributing causes which we do not deem it necessary here to notice. After the attendance in the theatre began to diminish and the appellant's business began to fail, he discussed the matter with a number of persons, including representatives of the film exchanges, representatives of labor unions and the real estate agents for the building, and, although he complained somewhat bitterly as to what was happening to his business, he at no time suggested the noise from the tap dancing as one of the causes. If the tap dancing had anything to do with the falling off of the attend-

ance, it played a minor part, and the extent to which it contributed, if at all, would rest in conjecture. The potent and primary causes are those already mentioned, the character of the equipment and the general falling off of attendance at theatres.

It would be impossible here to undertake to review all of the testimony or the material portions of it, and, since the question presented is one of fact, such a review would serve no reasonable purpose. It would greatly extend the opinion, and benefit no one. Inasmuch as we have found that the tap dancing was not the cause of the failure of the appellant's business, we do not discuss or consider the question of what would have been the holding had that been the cause that produced the result.

The judgment will be affirmed.

TOLMAN, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.